DB ORBAN, INC., Plaintiff,

v.

ORBEX INTERNATIONAL,
INC., Defendant.

No. Civ. 83–522.

United States District Court,
D. New Jersey.

March 16, 1983.

Wacks, Hersh, Ramsey & Berman by
Alvin D. Hersh, Morristown, for plaintiff.

Stephen B. Judlowe, Murray Hill, for defendant.

## OPINION

BIUNNO, Senior District Judge.

The complaint in this case is in two counts. The first is grounded on alleged tortious interference with business relations and unfair competition, and the second on alleged violation of the Lanham Act, 15 U.S.C. § 1125(a), through the use of a corporate name, Orbex International, Inc., said to be calculated to mislead customers and suppliers of plaintiff by reason of the similarity to its corporate name, DB Orban, Inc.

The case came before the court on the return of an order to show cause issued February 17, 1983 (the same day the complaint was filed) and returnable February 28, 1983; and also on a motion by defendant filed February 28, 1983 to resist the

requested preliminary injunction and to dismiss the complaint under "Rule 12" [sic], which motion was made returnable March 7, 1983.

For reasons set out hereafter, the order to show cause is vacated as improvidently granted, and the motion to dismiss under Rule 12 is denied without prejudice. Instead, because of the facts appearing of record by pleadings and affidavits, and developed by questions put to the parties at the hearing of March 14, 1983, the court concludes that venue does not lie in this District and exercises its discretion, in the interests of justice, to transfer the case to the U.S. District Court for the District of Connecticut, where it might have been brought, 28 U.S.C. § 1406(a), after hearing the parties on the question which was raised by the court at the hearing.

### A. *The order to show cause.*

■ General Rule 12–A of this district provides in part that:

"No order to show cause to bring on a matter for hearing will be granted except on a clear and specific showing by affidavit of good and sufficient reasons why procedure other than by notice of motion is necessary".

There is no such affidavit. The only supporting affidavit is one by Jurgen Schlate, an executive vice president for operations of plaintiff DB Orban, sworn to January 28, 1983 in Passaic County, N.J., twenty days before it was filed with the complaint. It addresses the merits of the claim for preliminary injunction but, as the attorney agreed at argument, does not say why an order to show cause, rather than a notice of motion, is necessary. There is no Rule 12–A affidavit, and the papers should never have been sent to the other judge to whom the case was initially assigned, and, for lack of the affidavit, the order to show cause was improvidently granted.

Under other circumstances, the court would ordinarily treat the order to show cause as though it were a notice of motion (which the General Rules here require to be served and filed at least 24 days before the noticed regular motion day) and would set a schedule for affidavits and briefs to fit the regular motion pattern. However, since the case is filed in the wrong district, and since the interests of justice call for a transfer to a district where the case might have been brought, no reason appears why the application should not be renewed before, and decided by, the transferee court.

The court also takes judicial notice of its own records and observes that on November 17, 1982, K. Peter Orbanowski (the principal and sole shareholder of Orbex) filed suit here against DB Orban, Inc. in connection with the termination of his employment on August 31, 1982 with Orban Export, Inc., a subsidiary of DB Orban, Civ. 82–3870.*

Thereafter, on December 13, 1982, the defendant there and plaintiff here, DB Orban, filed its answer, counterclaim and a third-party complaint to bring in Orbex, not theretofore a party. Mr. Orbanowski then moved to dismiss the third-party complaint on the ground that it did not bring in a "person not a party to the action who is or may be liable to" DB Orban "for all or part of" Mr. Orbanowski's claim against DB Orban, see F.R.Civ.P. 14(a). Before that motion could be heard, or even prepared, the parties submitted a consent order to dismiss the third-party complaint. Motion filed January 3, 1983, noticed for February 7th, and corrected to February 14, 1983.

As established at the hearing of March 14, 1983, there was no application, whether by way of notice of motion or order to show cause, to seek any form of preliminary relief against Orbex at that time although the underlying fact allegations of the third-party complaint were the same ones now set out in a separate complaint.

### B. *Basis of jurisdiction*

The complaint as filed rests on diversity of citizenship with an amount in controver-

---

* Summary judgment for DB Orban was later entered in that first case, Civ. 82–3870, and af-

firmed March 9, 1984, CA–3, No. 83–5582.

sy exceeding $10,000, (Complaint, I, par. 1), 28 U.S.C. § 1332.

The plaintiff, DB Orban Company, is said to be a joint venture of two corporations and jointly owned by them, both being Delaware corporations with their principal place of business at Wayne, N.J., the same location where DB Orban has its principal place of business. These other companies are DB Orban Holding Co., Inc., and Koci-DB Holding Co., Inc., (Complaint, I, par. 2).

Orbex, on the other hand, is said to be a Connecticut corporation with its principal place of business in Old Greenwich in that State (Complaint, I, par. 3).

### C. The Venue Question

■ Venue alleged is based on "28 USC § 1931" [sic] (should read "28 USC § 1391") without particularizing the applicable part of the section. As noted, the second count is based on § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). That claim is one arising under the laws of the United States and jurisdiction rests on 28 U.S.C. § 1331 as a "federal question" claim, or 28 U.S.C. § 1338, or both.

Since jurisdiction is not founded "solely" on diversity of citizenship, the action may be brought only where all defendants reside, (Connecticut), or where the cause of action arose (disputed) except as otherwise provided by law (no other provision indicated), 28 U.S.C. § 1391(b).

As a corporation, defendant Orbex "resides" for venue purposes and thus may be sued in any judicial district in which

... it is incorporated (Connecticut)

... it is licensed to do business (Connecticut)

... it is doing business (Connecticut)

See 28 U.S.C. § 1391(c).

Plaintiff is master of its own claim, and if it had chosen not to assert the federal claim of Count II under the Lanham Act, the issue of venue under § 1391(b) and (c) would not have been before the court. See, La Chemise Lacoste v. The Alligator Co., 506 F.2d 339 (CA 3, 1974), cert. den. 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94. In fact, the complaint has the appearance of having been drafted at first with but a single, state law claim with jurisdiction and venue based on diversity alone. It may be that the federal claim of Count II was added later, something entirely possible since the Schlate affidavit was sworn to January 28th, but neither it nor the complaint was filed until February 17th. If this is what happened, the draftsman failed to modify the allegations of jurisdiction and venue.

But the federal claim is there, and so this case is not like La Chemise Lacoste in that regard. Plaintiff did not carefully refrain from asserting a federal claim, and thus the matter is governed by a different venue statute and standard.

The only evidential suggestion that Orbex is "doing business" in New Jersey is that one of its suppliers is located here; all of its customers are overseas, as it is an export business, and other suppliers are located elsewhere than New Jersey. The instrument by which Orbex agrees to be "the export sales agency" for all business developed by it for destinations outside the U.S., Canada, Puerto Rico and South America on behalf of The Thinsheet Metals Company, and undertakes to refer all export inquiries falling into the latter's production program to it, appears to make it a manufacturers' representative or a selling agent, as described in the Appendix to George R. Darche Assoc. v. Beatrice Foods Co., 538 F.Supp. 429 (D–N.J., 1981), aff'd, CA 3, 1982, 676 F.2d 685.

Such a function can be easily executed without ever having anyone enter New Jersey or making use of or benefiting from its laws. Customer orders to be filled by the New Jersey supplier can be forwarded by interstate mail, telephone, telegraph, telex, teletype, computer terminal, satellite or carrier pigeon. See, e.g., Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1922). Thus, the bare fact that one supplier is in New Jersey, whose goods go out to overseas customers, falls far short of showing that Orbex is "doing business" within New Jersey for venue purposes.

At the hearing, DB Orban argued that Mr. Orbanowski, while still on the payroll of Orban Export Inc., formed Orbex (in August, 1982) and solicited business from DB Orban's customers by the letter of August 31, 1982. This, it is said, is enough to show that the cause of action arose in New Jersey in the form of a breach of fiduciary duty and the like.

While ingenious, the argument is not persuasive. Mr. Orbanowski was the president of Orban Export, Inc., not of DB Orban, and Exh. A to his responding affidavit shows that at the Board meeting of April 23, 1982 the decision of the parent was to phase out Orban Export, a matter further detailed on May 20, 1982 by the Finance Committee. Termination was set for September 30, 1982.

On June 8, 1982, his draft letter was approved except for a recommendation that it include a reference to continuation of the Duisberg office on a commission basis (Exh. D), and the final draft approved contained that provision (Exh. C).

As early as May 24, 1982, only 4 days after the Finance Committee conference, Mr. Orbanowski's uncle, Kurt Orban (and the source of the business name K. Orban) wrote a trade association in New York to ask that his nephew, Peter, be supported in the export business he planned to start with the termination of DB Orban's activity in that field (Exh. B).

On August 30, 1982 Peter was told by DB Orban that his employment with Orban Export would be terminated on August 31, 1982 with salary continued to September 30, 1982 so that he would have an "additional month" to find employment (Exh. E).

Orbex's general letter to potential export customers is dated September 24, 1982 (after his termination) and accurately states that Orban Export was merged with Deutsche Babcock into DB Orban, that it had decided to discontinue the "export trading business from the United States, copy of letter attached", and that he had formed a *new* company, Orbex, which would continue to "represent" Thinsheet, Cross, Califoil, Cooper, GASO Pump and others, and solicited inquiries and orders to Connecticut.

The court suggested that Uncle Kurt had made a place for nephew Peter as president of Orban Export; that the new German partners gently trimmed some overhead by closing Orban Export, which no longer needed a president and a president's salary, and after this was done and Peter went out to drum up activity in the abandoned business, DB Orban changed its mind. This rather obvious inference was not seriously disputed, and while the court refrains from making a finding on the point, its rational nature indicates that no cause of action arose until after DB Orban changed its mind, which may have been after K. Peter Orbanowski filed the first lawsuit.

D. *The Rule 12 Motion to Dismiss*

■ This motion should not have been accepted for filing. It was given on 7 days' notice when the General Rule 12–C, as amended last year, calls for 24 days' notice.

For good cause, the court may allow shorter notice, but there is no record of any kind to indicate that an application was made, what grounds were advanced, or that it was ordered allowed. There is nothing in the clerk's file, no entry on the docket sheet, no minute entry, no verbatim record of a hearing (much less a transcript) to show what happened on the 28th (the return day of the order to show cause), or on March 7th (the return day of the Rule 12 motion).

Inquiry of the lawyers at the hearing disclosed that they had either phoned to or been phoned from chambers of the first judge, probably after the case was reassigned, and told that there would be a consolidation with the first case and a further adjournment. No such message was authorized by this member of the court, who received such papers as there were on March 9th and was ready to hear the matter on March 14th.

There is only one document, and it is a letter in the chambers file not recorded in any way on the court's records, from a New York law firm not a member of the

bar of this court, addressed to the first judge, noting a conversation with one of his clerks to change the date for responding papers on the order to show cause to February 28th, and for oral argument to March 7th. Nothing more.

This court, bordered as it is on the North with many large Knickerbocker law firms and on the South by many large Philadelphia law firms, has always been generous in allowing out-of-state lawyers (often the client's regular legal adviser) to appear pro hac vice. But it has also insisted that there be in all civil cases an attorney of record who is a member of the bar of this court and who maintains an office for the regular transaction of business in this District so that the court's business can be handled properly.

The utter lack of any record in this reassigned case is a typical example of what happens when this prudent rule is disregarded. This is a court of record, and its business cannot be conducted efficiently in thin air. It must be done on paper. The criticism is levelled not only at plaintiff's attorney but also at defendant's, since the papers on file show that while he has a New Jersey office address he is also a member of a New York law firm and that papers were served on him at his New York address.

Hopefully, after transfer, the attorneys will do somewhat better in complying with the rules in the District of Connecticut, where the court is also a court of record.

Having been improperly accepted, the Rule 12 motion is denied without prejudice to renewal, if renewed at all. The transfer will eliminate any dispute about jurisdiction over the person of Orbex, or over the propriety of the venue. It will highlight F.R. Civ.P. 1 so that the just, *speedy and inexpensive* determination of the matter may be achieved.

Should any party wish to further argue the matter of venue, or to have an evidentiary hearing beyond the facts of record in the affidavits and in the questions and answers at the hearing, the rule in this District is that a motion for that purpose must be served and filed within 14 days after the entry of the order based hereon, General Rule 12–I.

A separate order is entered.